UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


Travin Lister,                                    Case No. 3:19-cv-1583

                    Plaintiff

v.                                                MEMORANDUM OPINION AND
                                                  ORDER

Allen Oakwood Correctional
Institution, et al.,

                    Defendants


*Pro se* Plaintiff Travin Lister ("Lister" or "Plaintiff") is a state prisoner presently incarcerated

at the Warren Correctional Institution.  He brings this action pursuant to 42 U.S.C. § 1983 against

defendants Allen Oakwood Correctional Institution ("AOCI"), Gary Moore, Warden James

Haviland, Lt. Moore, C.O. Marshall, C.O. Martin, Sherri Schnipke, Lt. Briley, Chaplin Engle, and

Kelly Riehle (collectively "Defendants") regarding events that took place while he was incarcerated

at AOCI.  Plaintiff alleges that Defendants have violated his rights under the First, Eighth and

Fourteenth Amendments to the United States Constitution, the Religious Land Use Institutionalized

Persons Act ("RLUIPA"), and certain state laws.  (Doc. 1).

For the following reasons, I dismiss this action.  I also deny Plaintiff's motion requesting

immediate discovery as moot (Doc. 3).

## BACKGROUND

Plaintiff is a state prisoner currently confined at the Warren Correctional Institution.  At the

time of the events at issue Plaintiff was confined at AOCI where, he alleges, Defendants did not

allow him to practice the Asatru religion in accordance with its guidelines and he was punished and persecuted for doing so. (Doc. 1 at 3).

Specifically, Lister alleges that on March 30, 2018, he was in his cell performing a religious offering known as "Blot" celebrating "Ostara." Plaintiff states that he is permitted to perform "Blot" in the privacy of his cell. To do so, he poured two cans of orange juice purchased in the commissary into a plastic ritual bowl to which he added oranges and pieces of bread as an offering to his gods and goddesses. (*Id.*). Lister performed the "Blot" again with grape juice. He then placed his offering into two trash bags and placed them in the bottom drawer of the cabinet in his cell until they could be disposed of properly so as not to desecrate his offerings. Plaintiff claims that just as he did this he was "rudely interrupted" in prayer by defendant Martin who opened Lister's cell door and turned on the light. (*Id.* at 4).

Plaintiff states that he began to curse at Martin and was highly upset that Martin interrupted his prayers. Lister states that because he was angry, Martin had to order him to step out of his cell several times before he complied. Martin then inspected the two trash bags and said: "Oh yeah, we got hooch." Plaintiff objected saying it was not hooch but a religious offering. In response, Martin and defendant Marshall laughed and stated: "We don't care about your religion and that's bullshit there's no such thing, we don't even recognize that religion." Martin radioed for defendant Moore, and Plaintiff tried to explain to her that the contents of the bags contained his juice offerings and was not hooch, but she did not open the bags or test the contents before writing Plaintiff up for a Rule 39 violation. Lister alleges that Martin, Marshall and Moore desecrated his religious offerings by not disposing of them properly and substantially burdened the exercise of his religion, and that he is afraid to practice his religion for fear of punishment or retaliation. (*Id.* at 5-6).

Lister filed informal complaints, grievances, and appeals concerning this incident but alleges in conclusory fashion that "they" laughed at him, called him a liar, harassed, and persecuted him,

and were "well aware" of prison policies regarding Asatru but chose to ignore them. Plaintiff states that as a result, he is emotionally distraught and believed his gods are upset with him because of this incident. (*Id.* at 6).

Lister claims that defendants Schnipke, Ward, and Riehle were negligent in failing to properly investigate and resolve the matter. As a consequence of the Rule 39 charge, Plaintiff alleges that he lost his "judicial release." Lister alleges that Moore, Shine, Couch, Weekly, Klaus, John Doe, and the Vault Officer conspired and lied that they had verified Plaintiff's religious offerings as "hooch." (*Id.* at 6-7).

Plaintiff claims that being persecuted for practicing his religion constitutes cruel and unusual punishment. He further alleges that he was denied due process with respect the to rule violation because he was denied the witness he requested, defendant Engle. Plaintiff alleges that Engle told Plaintiff he would testify about the Asatru religion, but Briley later told Plaintiff that Engle wanted nothing to do with Lister. Lister claims that he was found guilty of a rule violation he did not commit to persecute and punish him for his religion.

According to the complaint, Plaintiff was told he could no longer hold "Blot." Plaintiff was, however, permitted to perform Asatru religious services in a room provided by AOCI. Lister attaches to the complaint the sign-in sheet for reservation of the room for "meaningful activities," and the room is designated for use by Asatru adherents on Saturdays. (*See* Doc. 1-5 at 12). Notwithstanding, Plaintiff argues that the Ohio Department of Corrections ("ODRC") does not provide male and female priests to come and provide a proper "Blot" because it does not fully recognize the religion of Asatru, and it does not permit worship in a group setting or follow its

"Asatru Religious Policy,"[1] all of which is discriminatory as compared to what is permitted with respect to other religions. (*Id.* at 8-12).

Plaintiff does not set out separate causes of action against specific defendants. Rather, he summarily asserts that "Defendants" violated his rights as follows: right to religious freedom, First Amendment right to the free exercise of religion, RLUIPA, free exercise clause of the Fourteenth Amendment, equal protection, Eighth Amendment right to be free from cruel and unusual punishment and deliberate indifference in failing to protect Plaintiff's religious rights, negligence, conspiracy to cover-up negligence and convict Plaintiff of false charges, and emotional and mental anguish. For relief, Plaintiff seeks a preliminary and permanent injunction[2] to enforce his religious rights, compensatory damages in the amount of $300,000.00 and punitive damages in the amount of $200,000.00 against each Defendant. (*Id.* at 12-13).

## STANDARD OF REVIEW

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), I am required to dismiss an *in forma pauperis* action under 28 U.S.C. § 1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). A claim lacks an arguable basis in law or fact when it is premised on an indisputably meritless legal theory or

---

[1] "A prison official's failure to comply with a state administrative rule or policy does not itself rise to the level of a constitutional violation." *Roberts v. Croft*, No. 1:12 CV 0936, 2012 WL 3061384, at *11 (N.D. Ohio July 26, 2012) (citing *Laney v. Farley*, 501 F.3d 577, 581 n. 2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *McVeigh v. Bartlett*, 1995 WL 236687 at *1 (6th Cir. Apr. 21, 1995) (noting that the failure to follow a prison policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectable liberty interest)).

[2] Lister's claims for injunctive relief have been rendered moot by his transfer from AOCI to a different institution. *Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010) ("[A]ny declaratory or injunctive relief that Colvin seeks stemming from his complaint has been mooted by his transfer to a different prison facility.").

when the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007).

**ANALYSIS**

"In order to plead a federal cause of action under § 1983, a plaintiff must plead two elements: '(1) deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law.'" *Tate v. Comrie*, No. 5:16CV3090, 2018 WL 1409288, at *4 (N.D. Ohio Mar. 21, 2018) (emphasis removed) (quoting *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008) (citations omitted)); *Waters v. City of Morristown, TN*, 242 F.3d 353, 358-59 (6th Cir. 2001) (same) (citation omitted).

## A. Legal Claims against "Defendants"

As an initial matter, Plaintiff generically alleges that "Defendants" violated the laundry list of rights that he strings together in a single cause of action. (*See* Doc. 1 at 12-13). A "critical aspect" of a § 1983 claim is that in order for a defendant to be held liable, Plaintiff must demonstrate "'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Robertson v. Lucas*, 753 F.3d 606, 615 (6th Cir. 2014) (quoting *Iqbal,* 556 U.S. at 676). That is, Plaintiff must show that the alleged violation of his constitutional rights "was committed *personally*" by the defendant. *Id.* (emphasis in original); *Heyerman v. Cty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) (persons sued in their individual capacities under § 1983 are liable only for their own unconstitutional behavior) (citations omitted). "Section 1983 liability, however, cannot be premised solely on a theory of *respondeat superior*, or the right to control employees. *Heyerman,* 680 F.3d at 647 (citing *Hays v. Jefferson Cty.,* 668 F.2d 869, 872 (6th Cir. 1982)). While I am required to liberally construe the complaint, I am not required to construct claims on Plaintiff's behalf and conclusory

allegations and legal conclusions masquerading as factual allegations are insufficient to allege a plausible claim for relief. *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005).

With few exceptions in the complaint, Plaintiff's factual allegations generically refer to "Defendant" or "Defendants" or "they." Plaintiff fails to specify which defendant or defendants allegedly violated each legal right he lists under "Legal Claims," rendering the complaint subject to dismissal on that basis alone. Accordingly, I dismiss this action pursuant to § 1915(e)(2)(B).[3] *See Frazier v. Michigan*, F. App'x 762, 764 (6th Cir. 2002) (affirming dismissal of § 1983 claim under 28 U.S.C. §§ 1915(e) and 1915(A) and 42 U.S.C. § 1915e(c) for failure to state a claim against defendants in their individual capacity where plaintiff does not allege which of the named defendants were personally responsible for each claimed rights violation).

## B. Free Exercise of Religion and RLUIPA

Even if Plaintiff's First Amendment and RLUIPA claim could be construed as alleged against a specific defendant or defendants, he fails to allege a plausible claim upon which relief could be granted. The RLUIPA "protects 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief,' ... but, of course, a prisoner's request for an accommodation must be sincerely based on a religious belief and not some other motivation ...." *Holt v. Hobbs*, 135 S. Ct. 853, 862 (2015). Lister does not allege, and there are no facts alleged from which I may infer, that his religious beliefs are sincerely held. Even if I assume that Lister's beliefs are sincerely held, he fails to plausibly allege that Defendants' actions "substantially burdened" his exercise of religion. His only allegation in that regard is the conclusory statement that "Defendants substantially burdened the free exercise of my religion" in connection with the single incident in his cell described

---

[3] AOCI is dismissed from this action for the additional reason that it is not a legal entity capable of being sued under § 1983. *See Moon v. Richland Corr. Inst. Ohio*, No. 1:19 CV 1250, 2019 WL 2359196, at *1 (N.D. Ohio June 4, 2019) (Richland Correctional Institution is not a legal entity capable of being sued under § 1983) (collecting cases).

above. (Doc. 1 at 6). While Plaintiff states that defendant Briley and "the rest of the staff" at AOCI told him he that could no longer hold "Blot" in his cell, he states that "they" made a room available to Asatru adherent inmates and he was allowed to use that space to perform his religious services. (*Id.* at 9-10). Beyond a single conclusory allegation that he was substantially burdened in the practice of his religion by Defendants' actions, he fails to allege how his religious rights were so burdened by requiring him practice his religion in the room provided at AOCI.

Even with the benefit of liberal construction, Plaintiff fails to plausibly allege that Defendants violated his rights under RLUIPA. Plaintiff's First Amendment free exercise claim also fails because RLUIPA provides broader protections for religious liberty than the First Amendment. *Holt*, 135 S. Ct at 860. For these reasons, I dismiss those claims pursuant to § 1915(e)(2)(B).

## C. Equal Protection

Even if Plaintiff's Equal Protection claim could be construed as alleged against a specific defendant or defendants, he fails to allege a plausible claim upon which relief could be granted. The Equal Protection Clause of the Fourteenth Amendment prohibits discrimination by the government which burdens a fundamental right, targets a suspect class, or intentionally treats one differently than other similarly situated. *See Radvansky v. City of Olmsted Falls*, 395 F.3d 250, 260 (6th Cir. 2005). The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). The Equal Protection Clause "is in essence 'a direction that all persons similarly situated should be treated alike.'" *Robinson v. Jackson*, 615 F. App'x 310, 314 (6th Cir. 2015) (quoting *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985)).

Plaintiff alleges that the ODRC does not fully recognize the Asatru religion, does not provide male and female Asatru priests, and does not permit group worship by Asatru adherents because of gang concerns. Plaintiff also alleges that he is not permitted necessary religious items for

worship[4] and certain items are confiscated which are deemed a security threat or gang related, or both. (Doc. 1 at 10-11).

Plaintiff fails to plausibly allege an equal protection claim as he does not claim that, as an Asatru adherent, he is treated differently than similarly situated inmates of other religions. In order to be similarly situated, inmates of different religions must be similarly situated in all relevant respects. *See Tree of Life Christian Sch. v. City of Upper Arlington, Ohio*, 905 F.3d 357, 368 (6th Cir. 2018), *cert. denied*, 139 S. Ct. 2011 (2019). Plaintiff states that the treatment of Asatru adherents by the ODRC is based upon gang-related concerns. But Plaintiff does not claim that Asatru adherents are treated differently than inmates of other religions whom the ODRC also considers to be gang-related. Accordingly, Plaintiff has failed to allege that as an Asatru adherent he is treated differently from inmates of other religions who are similarly situated in all relevant respects. Accordingly, Plaintiff fails to allege a plausible equal protection claim and I dismiss that claim pursuant to § 1915(e)(2)(B).

### D. Eighth Amendment

Even if Lister's Eighth Amendment claim could be construed as alleged against a specific defendant or defendants, he fails to allege a plausible claim upon which relief could be granted. Plaintiff's Eighth Amendment claim for cruel and unusual punishment and deliberate indifference relate to Defendants' alleged violations of his religious rights, which I have dismissed. Therefore, Lister fails to state a plausible claim of cruel and unusual punishment or deliberate indifference, and I dismiss his Eighth Amendment claim pursuant to § 1915(e)(2)(B).

---

[4] Plaintiff also alleges that he is permitted to purchase religious items from an approved religious vendor, but he cannot afford to do so. (Doc. 1 at 3).

**E.  Due Process**

Plaintiff alleges that he was falsely charged and convicted of a Rule 39 violation which remains on his R.I.B. record.  Plaintiff claims that, as a consequence, he lost "judicial release"[5] without due process because he was denied his witness.  (Doc. 1 at 7-9).

My ability to review prison disciplinary proceedings is limited.  District courts have no authority to review a disciplinary committee's resolution of factual disputes, or to make a redetermination of an inmate's innocence or guilt.  *Superintendent, Massachusetts Correctional Institution at Wolpole v. Hill*, 472 U.S. 445, 455 (1985).  The only question that I may consider is whether the hearing complied with basic due process requirements.

This standard is not a difficult one to meet.  To comply with the requirements of the Due Process Clause, prison officials need only provide a prisoner facing loss of good time credits[6] with: (1) a written notice of the charges at least 24 hours prior to any hearing, (2) an opportunity to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals, and (3) a written statement by the fact finder as to the evidence relied upon and the reasons for the disciplinary action.  *Wolff v. McDonnell*, 418 U.S. 539, 564-66 (1972).

Due process requires only that disciplinary findings resulting in the loss of good time credits be supported by "some evidence" in the record.  *Superintendent, Massachusetts Correctional Institution at Wolpole*, 472 U.S. at 454-56.  This standard is satisfied where "there is any evidence in the record that could support the conclusion reached by the disciplinary board."  *Id.*  The RIB hearing officer is not required to base findings on overwhelming or irrefutable proof of guilt.  Even where the evidence is

---

[5] Judicial release is a form of early release that may be granted by a prisoner's judge.  See Ohio Rev. Code 2929.20.

[6] For the purpose of this analysis, I will consider Plaintiff's loss of judicial release as equivalent to loss of good time credit.

contradictory or partially exculpatory, the hearing officer may base a finding of guilt on only "some evidence" that indicates the prisoner is guilty. *Id.* at 457.

In this case, the incident occurred on March 30, 2018, and Lister received a copy of the conduct report on April 2, 2018. (Doc. 1-5 at 1). The Rules Infraction Board ("RIB") hearing was conducted on April 12, 2018. (Doc. 1 at 8; Doc. 1-5 at 4). The first due process requirement of *Wolff* is satisfied.

Plaintiff alleges that he was denied his witness at the hearing – Chaplin Engle. (Doc. 1 at 8). Lister claims that he spoke to Engle before the hearing and Engle agreed to explain Plaintiff's religion at the hearing. Plaintiff states that he was later told by defendant Briley that Engle declined to attend the hearing because Engle wanted nothing to do with Lister or his religion. (Doc. 1 at 8). Lister alleges that "they" conspired to find him guilty of a rule violation he did not commit. (Doc. 1 at 8). Taken as true, Lister's allegations do not plausibly allege that he was denied Engle as a witness. Due process does not require an unwilling witness to testify on behalf of an inmate at a RIB hearing, and Plaintiff does not allege that Defendants prevented Engle from testifying. Plaintiff does not allege that he was denied the opportunity to present documents at the RIB hearing. The second due process requirement of *Wolff* is satisfied.

Lastly, the RIB disposition report found Lister guilty of Rule 39 and 21 violations. The report states that RIB hearing officer considered Lister's testimony, the charging officer's report, and defendant Moore's verification that the substance found in Lister's cell was homemade alcohol. (Doc. 1-5 at 4). *Wolff* requires that a written statement by the hearing officer stating the evidence relied upon and the reasons for the disciplinary action, and there must be "some evidence" in the record to support the disciplinary finding resulting in loss of good time credits. Here, the RIB hearing officer explained the evidence he relied upon to support his finding of a rules violation and there was "some evidence" to support that finding. Lister contends that it is not true that his

offerings were homemade wine, Moore lied at the RIB hearing, and that Moore, Shine, Couch, John Doe, Weekly, Klaus, and the Vault Officer lied when they said that they verified that his offerings were "hooch." (Doc. 1 at 7-8). But Plaintiff's disagreement with the outcome does not mean that he was denied due process. Lister appealed the RIB ruling and reargued his position, but the Warden affirmed the RIB ruling. (Doc. 1-5 at 6-8). The third due process requirement of *Wolff* is satisfied.

Here, all the due process requirements of *Wolff* were satisfied and there is "some evidence" to support the RIB ruling that Lister was guilty as charged. Lister disagrees with the outcome, but his disagreement with factual issues and finding of guilt does not demonstrate he was denied due process.

Accordingly, Lister fails to state a plausible due process claim and I dismiss that claim pursuant to § 1915(e)(2)(B).

## F. State Law Claims

In addition to his federal claims, Lister claims that certain defendants were negligent in their investigation with respect to the events in the conduct report, causing him mental anguish. (Doc. 1 at 6-7). To the extent that Lister is asserting state law claims, I decline to exercise supplemental jurisdiction over those claims. A district court may decline to exercise supplemental jurisdiction over state law claims when the claims supporting original jurisdiction are dismissed. 28 U.S.C. § 1367(c)(3). Moreover, the Sixth Circuit has held that "[w]hen all federal law claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims ...." *Musson Theatrical, Inc. v. Federal Express Corp.,* 89 F.3d 1244, 1255 (6th Cir. 1996). Accordingly, Lister's state law claims are dismissed without prejudice.

## Conclusion

For the reasons stated above, I dismiss Plaintiff's federal claims pursuant to 28 U.S.C. §

1915(e). I dismiss Plaintiff's state law claims without prejudice. Plaintiff's motion requesting

immediate discovery is moot, and I deny the motion on that basis. (Doc. 3).

I certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal from this decision could not be

taken in good faith.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge